UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWIN FRU NGUTI,

       Petitioner,

  v.                                                     6:16-CV-6703(LJV)
                                                        ORDER

JEFFERSON B. SESSIONS III, Attorney
General of the United States; JOHN F.
KELLY, Secretary of the Department of
Homeland Security; THOMAS P.
BROPHY, Acting Field Office Director,
Buffalo Field Office, Enforcement and
Removal Operations, U.S. Immigration and
Customs Enforcement; and JOSEPH
KOSAN, Acting Facility Director, Buffalo
Federal Detention Facility,

       Respondents.[1]
_____


## INTRODUCTION

      This is one of at least two cases[2] before this Court in which a civil immigration detainee held at the Buffalo Federal Detention Facility has been denied his right to a bond hearing under *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015). Government officials in this district apparently have adopted a paradoxical interpretation of *Lora*, which has resulted in their providing aliens with serious criminal records better opportunities to obtain bail than similarly situated non-criminal aliens.

---

[1] The Clerk of Court shall amend the caption as set forth above. *See* Fed. R. Civ. P. 25(d) (automatic substitution of public officers).

[2] *See Enoh v. Sessions*, 16-CV-85(LJV), 2017 WL 1041597 (W.D.N.Y. Feb. 22, 2017).

For the reasons set forth below, this Court holds—for a second time[3]—that *Lora* and the due process concerns raised by indefinite detention require that 8 U.S.C. § 1226(a) detainees in prolonged detention (i.e., more than six months) receive *Lora* bond hearings. At those bond hearings, the burden is on the government to establish by clear and convincing evidence that the alien poses a risk of flight or danger to the community. Moreover, due process requires those bond hearings to be contemporaneously recorded.

This Court is mindful that *Jennings v. Rodriguez*, No. 15-1204—a case that concerns many of the same issues addressed in *Lora* and herein—currently is pending before the Supreme Court. That case was argued on November 30, 2016, and on December 15, 2016, the Court requested further briefing on issues directly relevant to the case at bar. It therefore is likely that the Supreme Court will soon confirm, clarify, or perhaps even upend the law in this area. But in the meantime, that is no reason to deny Nguti—a non-criminal alien who has been detained for close to two years—the relief to which he clearly is entitled under the law in this circuit.

## **BACKGROUND**

The petitioner, Edwin Fru Nguti, is a civil immigration detainee currently held at the Buffalo Federal Detention Facility. On October 27, 2016, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that he is being detained in violation of the Constitution or laws of the United States. Docket Item 1. On November

---

[3] This Court already found that a § 1226(a) detainee is entitled to a *Lora* bond hearing in *Enoh v. Sessions*, 16-CV-85(LJV), 2017 WL 1041597 (W.D.N.Y. Feb. 22, 2017). Although the government's recent submission in this case fails to distinguish *Enoh* in any way from the case at bar, the government has taken the position that there is no reason to provide a *Lora* bond hearing to Nguti (or presumably any other individual in prolonged detention under § 1226(a)) unless a court order specifically requires it.

17, 2016, he filed an amended petition. Docket Item 3. This Court (Hon. David G. Larimer) ordered the government to respond, and the government did so on December 22, 2016. Docket Items 6 & 7. On March 31, 2017, this case was transferred from Judge Larimer to the undersigned. Docket Item 9.

The salient facts are not in dispute and are set forth in the record. Nguti is a "native and citizen of Cameroon" who was "taken into ICE custody on August 10, 2015, and has remained so continuously since that date." Docket Item 3 at ¶ 11. Thus, he has been in custody for more than one year and eight months. According to the government, Nguti's current detention is discretionary, pursuant to 8 U.S.C. § 1226(a). Docket Item 7 at 11, n. 9; *see* Docket Item 11 at 3-4. Although Nguti has previous convictions for driving while intoxicated, he has not been convicted of a crime that would trigger the application of 8 U.S.C. § 1226(c) (mandatory detention for aliens convicted of, among other things, an offense punished by a year or more in prison or an offense involving firearms, controlled substances, or moral turpitude).

Two months after the government responded to Nguti's petition, this Court issued its decision in in *Enoh v. Sessions*, 16-CV-85(LJV), 2017 WL 1041597 (W.D.N.Y. Feb. 22, 2017), which granted a habeas petitioner's request for a *Lora* bond hearing in circumstances very similar to those here. On April 4, 2017, this Court therefore ordered the government to show cause why Nguti should not immediately be given a *Lora* bond hearing in light of this Court's decision in *Enoh*. Docket Item 10. This Court further ordered the government to explain certain statements in its submissions that seemed to be flatly contradicted by the record. *Id.*

3

**DISCUSSION**

I.   **THE PETITIONER'S ENTITLEMENT TO A *LORA* BOND HEARING**

   A.   **The Second Circuit's Decision in *Lora v. Shanahan***

In *Lora v. Shanahan*, the Second Circuit observed that a civil immigration detainee "who contests his or her removal regularly spends many months and sometimes years in detention due to the enormous backlog in immigration proceedings." 804 F.3d 601, 605 (2d Cir. 2015). Because of that worsening problem, there were—as of October 2015—"thousands of individuals in immigration detention within the jurisdiction of [the Second Circuit] who languish in county jails and in short-term and permanent ICE facilities." *Id.*

As the Second Circuit recognized, "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 606 (quoting *Demore v. Kim*, 538 U.S. 510, 526 (2003)). Indeed, Congress has been "quite clear that it wanted" detainees with serious criminal records and who "are dangerous or have no ties to a community" to be detained pending deportation. *Lora*, 804 F.3d at 605. But "the indefinite detention of a non-citizen 'raise[s] serious constitutional concerns' in that '[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.'" *Id.* at 606 (alterations in original) (quoting *Zadvydas v. Davis,* 533 U.S. 678, 682, 690 (2001)). And some detainees, "for a variety of individualized reasons, are not dangerous, have strong family and community ties, are not flight risks and may have meritorious defenses to deportation at such time as they are able to present them." *Lora*, 804 F.3d at 605.

Based on those considerations and principles of statutory interpretation, the Second Circuit held that "in order to avoid the constitutional concerns raised by indefinite detention," "an immigrant detained pursuant to [8 U.S.C. §] 1226(c)"—which provides for the mandatory detention of criminal aliens pending removal proceedings—"must be afforded a bail hearing before an immigration judge within six months of his or her detention." *Lora*, 804 F.3d at 616. The Second Circuit also "[f]ollow[ed] the Ninth Circuit" in holding that at such a hearing, "the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Id.* (citing *Rodriguez v. Robbins*, 715 F.3d 1127, 1131 (9th Cir. 2013)).

### B. 8 U.S.C. § 1226(a) and § 1226(c)

As the lower court's decision in *Lora* noted, there are "two distinct provisions governing an alien's detention while removal proceedings are pending." *Lora v. Shanahan*, 15 F. Supp. 3d 478, 482 (S.D.N.Y. 2014) (quoting *Straker v. Jones*, 986 F. Supp. 2d 345, 351 (S.D.N.Y. 2013)). "The first provision"—8 U.S.C. § 1226(a)—"provides for [discretionary] detention during removal proceedings subject to an individualized bond hearing." *Lora*, 15 F. Supp. 3d at 482. "Under the second provision"—8 U.S.C. § 1226(c)—which is "entitled 'Detention of criminal aliens,' aliens falling within certain enumerated categories 'shall' be mandatorily detained without a hearing." *Lora*, 15 F. Supp. 3d at 482-83. Broadly speaking, then, the detention of a criminal alien facing possible deportation is mandatory under § 1226(c), while the detention of a non-criminal alien facing possible deportation is discretionary under § 1226(a).

5

The term "individualized bond hearing," as quoted in the above paragraph, refers to a procedural protection to which non-criminal detainees are entitled under Department of Homeland Security regulations. More specifically:

> In connection with § 1226(a), the Department of Homeland Security ("DHS") promulgated regulations setting out the process by which a non-criminal alien may obtain release. The regulations provide that, in order to obtain bond or conditional parole, the "alien must demonstrate to the satisfaction of the [decision maker] that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). The District Director makes the initial custody determination, and the alien has the right to appeal an adverse decision to the IJ, and then to the BIA. *Id.* § 1236.1(d)(1), (3).

*Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1208 (11th Cir. 2016) (alteration in original). The regulations did not provide a similar procedure for criminal detainees. *See id.* ("Under § 1226(c), custody is mandatory for criminal aliens throughout the entirety of their removal proceedings, and there is no statutory possibility for release on bond.").

The bond hearing described in the regulations differs significantly from what would later be called a "*Lora* bond hearing" in this circuit (or a "*Casas* bond hearing" in the Ninth Circuit). For example, a *Lora* bond hearing is available only after "prolonged" detention (i.e., more than six months), whereas the regulations provide § 1226(a) detainees with earlier opportunities to obtain release. A *Lora* bond hearing also assigns the government the burden to prove "by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community," while the regulations place the burden of proof on the detainee.

If the government's position in the case at bar were correct, then a third difference between a *Lora* bond hearing and the procedure described in the regulations would be that a *Lora* bond hearing is available only to criminal (§ 1226(c)) detainees,

6

not to non-criminal (§ 1226(a)) detainees.  That is both illogical and legally unsound.  Indeed, as set forth below, there are many reasons to reject the government's unsupported and untenable position.

**C.     Analysis**

It seems fairly obvious why 8 U.S.C. § 1226(a), § 1226(c), and their attendant regulations provide for different treatment of certain aliens in pending removal proceedings:  "Congress enacted . . . a statutory approach that comparatively disadvantages aliens who commit crimes over law-abiding aliens in removal proceedings."  *Sopo*, 825 F.3d at 1220; *see Lora*, 804 F.3d at 605 (Congress has been "quite clear that it wanted" detainees with criminal records and who "are dangerous or have no ties to a community" to be detained pending deportation). Simply put, it makes perfect sense that whether an alien is released on bail pending his or her removal proceedings should depend in part on the alien's criminal history (or lack thereof).

The petitioner in *Lora*—whom the Second Circuit found was entitled to a bond hearing at which the government must meet an enhanced burden of proof—was a criminal alien who had been subject to mandatory detention under § 1226(c).  In other words, he was a member of the class of aliens whom Congress decided to "comparatively disadvantage[]" relative to their non-criminal counterparts.  For that reason, this Court previously noted in *Enoh* that

> [a]lthough *Lora* involved an alien subject to mandatory detention under § 1226(c), this Court is aware of no reason why an alien detained for more than six months under § 1226(a) would have less of an entitlement to a bond hearing with the burden on the government to prove the need for detention by clear and convincing evidence. . . .  If anything, an alien who is subject only to discretionary detention under § 1226(a) would seem to have a greater liberty interest than a criminal alien subject to mandatory detention under § 1226(c).

7

2017 WL 1041597, at *3; see also Gordon v. Johnson, 300 F.R.D. 31, 42 (D. Mass. 2014) ("as a matter of fairness, [§ 1226(c) detainees] should not receive more protection than their 1226(a) counterparts who, it should be noted, have not committed any § 1226(c) predicate offense"), vacated on other grounds, Gordon v. Lynch, 842 F.3d 66 (1st Cir. 2016). And for that reason, among others, this Court found that the petitioner in Enoh, whose detention was pursuant to § 1226(a), was entitled to a Lora bond hearing.

For *some* reason (the emphasis being necessary because the reason has not been made clear), officials in this district apparently have settled on a very different interpretation of Lora. According to the petition, Nguti "requested a hearing for review of his detention in front of an immigration judge pursuant to Lora v. Shanahan and a Bond Redetermination Hearing pursuant to 8 U.S.C. § 1226(a) [and the relevant regulations]. On August 25, 2016, [the IJ] denied the requests for both hearings . . . ." Docket Item 3 at ¶ 28. The IJ's decision one-page form decision states: "Not eligible under Lora - not held under [INA §] 236(c) [i.e., 8 U.S.C. § 1226(c)]. Court lacks jurisdiction under [INA §] 236(a) [i.e., 8 U.S.C. § 1226(a)]." Docket Item 6-2 at 2. In other words, the IJ found that because Nguti had *not* committed one of the serious criminal offenses listed in § 1226(c), his liberty interests were entitled to *less* procedural protection.

The government's submissions in the case at bar double down on that counterintuitive conclusion. It is the government's position that non-criminal aliens in prolonged detention under § 1226(a) may not avail themselves of the same procedural protection available to their criminal counterparts. See Docket Item 11 at 3 (Lora "does not provide authority for bond hearings for aliens who are not detained in mandatory

detention under INA § 236(c), 8 U.S.C. § 1226(c)."). The government offers no authority, reasoning, or explanation for its position apart from the following:

> By its terms, the circuit court's holding in *Lora* is limited to 8 U.S.C. § 1226(c), which provides for mandatory detention of certain aliens, including aliens with specific criminal convictions, pending the conclusion of their immigration removal proceedings. Thus, the *Lora* decision does not extend to 8 U.S.C. § 1226(a), the statute pursuant to which [petitioner] is detained.

Docket Item 11 at 3-4. In other words, the government's argument boils down to the following syllogism: *Lora* involved a § 1226(c) detainee, and Nguti is not a § 1226(c) detainee, so *Lora* does not apply to Nguti. That simplistic syllogism ignores much.

First, it ignores—or at least misinterprets, *see* Docket Item 11 at 3-4—this Court's decision in *Enoh*. Although that decision post-dates the IJ's denial of a bond hearing to Nguti in August 2016, it was well known to the respondents' counsel when she submitted the government's response to this Court's order to show cause. Despite that, the government simply does not address this Court's observation that a § 1226(a) detainee would seem to be more entitled to a *Lora*-type bond hearing than a § 1226(c) detainee. Nor does the government address this Court's overarching reason for that observation: all the same constitutional concerns at issue in *Lora* are present—and are even more persuasive[4]—in the case of a § 1226(a) detainee.

---

[4] *See generally Mathews v. Eldridge*, 424 U.S. 319 (1976). In *Mathews*, the Supreme Court articulated three factors relevant to deciding what due process is required in connection with the deprivation of liberty or property: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Next, the government's argument ignores the Second Circuit's express intent to join the Ninth Circuit in key aspects of its analysis involving the prolonged detention of aliens. "Specifically, [the Second Circuit] join[ed] the Ninth Circuit in holding that mandatory detention for longer than six months without a bond hearing affronts due process." *Lora*, 804 F.3d 601, 606. And it "[f]ollow[ed] the Ninth Circuit" in holding "that the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Id.* at 616. Both times, the Second Circuit cited *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013), a case in which the Ninth Circuit summarized its holdings in a series of related immigration detention cases—many of them involving § 1226(a).

In *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008), for example, the Ninth Circuit first held that "under § 1226(a)'s discretionary detention regime, a bond hearing is required before the government may detain an alien for a 'prolonged' period." *Rodriguez*, 715 F.3d at 1135. *Casas* left two questions unanswered: "the procedural requirements for bond hearings under *Casas* and the precise definition of 'prolonged' detention." *Rodriguez*, 715 F.3d at 1135. The first was answered by *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011): "[g]iven the substantial liberty interest at stake ... *the government must prove by clear and convincing evidence* that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." *Rodriguez*, 715 F.3d at 1135 (quoting *Singh,* 638 F.3d at 1203) (emphasis added). The second was answered by *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir.2011), which found that detention generally becomes "prolonged" after six months. *Rodriguez*, 715 F.3d at 1136. Only after reciting that history did the Ninth

Circuit conclude, "[c]onsistent with [its] previous decisions" and "to avoid constitutional concerns," that "§ 1226(c)'s mandatory language must be construed to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review." *Rodriguez*, 715 F.3d at 1138 (internal quotation marks omitted).

Thus, the Second Circuit's holding in *Lora* cites a Ninth Circuit case that explains how the Ninth Circuit *first* extended the procedural protection at issue to non-criminal § 1226(a) detainees, and *then* expanded that holding to criminal § 1226(c) detainees and others. That sequence of events is only logical; what is more, it takes into account Congress's intent to comparatively disadvantage criminal detainees when it comes to obtaining bail. And that makes it highly unlikely that the Second Circuit would disagree with affording § 1226(a) detainees the exact same procedural protection that it afforded a § 1226(c) detainee in *Lora*.[5]

Furthermore, it is worth noting that the district court's decision that was affirmed in *Lora* was premised on treating the petitioner in that case *as a § 1226(a) detainee*. That is, the district court did not go so far as to adopt Ninth Circuit case law, nor did it require any particular standard of proof at a bond hearing. Instead, it simply relied on the fact that the petitioner's detention was not authorized under § 1226(c). Therefore, the court found that § 1226(a) must govern the petitioner's detention, and § 1226(a)

---

[5] None of this is to imply that the Second Circuit agrees with all the Ninth Circuit case law discussed in *Rodriguez*. In *Enoh*, *supra,* this Court explicitly declined to follow certain of the Ninth Circuit's holdings based on the Second Circuit's decision in *Guerra v. Shanahan*, 831 F.3d 59 (2d Cir. 2016). *Guerra* drew a distinction between § 1226(a) detainees, who are in pending removal proceedings, and § 1231(a) detainees, who are subject to a final order of removal. 831 F.3d at 62. But in the Ninth Circuit, "individuals detained under § 1231(a)(6) are entitled to the same procedural safeguards against prolonged detention as individuals detained under § 1226(a)," so that distinction would not make a difference there. *Diouf*, 634 F.3d at 1084.

11

detainees are entitled to receive bond hearings. *See Lora*, 15 F. Supp. 3d at 482 n.7, 490 (citing *Scarlett v. U.S. Dep't of Homeland Sec. Bureau of Immigration & Customs Enf't*, 632 F. Supp. 2d 214, 218 (W.D.N.Y. 2009)).

As previously noted, when the Second Circuit affirmed the district court's decision, it went further and expressly followed the Ninth Circuit's decision in *Rodriguez*. In doing so, the Second Circuit did not explicitly address whether, after "prolonged" detention, the statutory authority for continued detention shifts from § 1226(c) to § 1226(a). But as *Rodriguez* (the Ninth Circuit case cited in *Lora*) explained:

> "[T]the mandatory, bureaucratic detention of aliens under § 1226(c) was intended to apply for only a limited time," after which "the Attorney General's detention authority rests with § 1226(a)." . . . [U]nder a fair reading of our precedent, when detention becomes prolonged, § 1226(c) becomes inapplicable.

*Rodriguez*, 715 F.3d at 1138. By that reasoning, then, the Second Circuit's decision in *Lora* did directly involve a § 1226(a) detainee—and even the government's simplistic observation that *Lora* involved a § 1226(c) detainee, not a §1226(a) detainee, is incorrect.

For all the above reasons, the proposition that a §1226(a) detainee, after prolonged detention, ought to receive the same *Lora* bond hearing as a § 1226(c) detainee strikes this Court as relatively uncontroversial. Yet the government chose "none of the above" when deciding which of these reasons to address in its response to Nguti's petition and in its additional briefing subsequent to this Court's decision in *Enoh*. Instead, the government appears to have adopted and maintained its position based on

nothing more than "the meaningless matching of statutory grounds," to use the Supreme Court's words in *Judulang v. Holder*, 565 U.S. 42, 57 (2011).[6]

This Court also notes that there appear to be no reported decisions in this circuit explicitly holding that *Lora* applies equally to § 1226(a) detainees, and yet this Court recently has been presented with two cases that both involved this issue. Perhaps that is because the government has wisely conceded the issue elsewhere, or perhaps policies and procedures in the Buffalo Federal Detention Facility differ from those in other facilities. Regardless, recent decisions from other courts in this circuit on analogous—if not identical—issues confirm this Court's conclusions. In *Heredia v. Shanahan*, 2017 WL 1169645 (S.D.N.Y. Mar. 28, 2017), for example, a court recently extended *Lora* to a § 1225(b) detainee (i.e., an alien detained upon entering the United States). The court could "find no basis to distinguish a LPR [i.e., a lawful permanent resident] detained before a removal hearing pursuant to § 1226(c) who is entitled to a bail hearing within six months . . . and a LPR detained pursuant to § 1225(b)." *Id.* *5. The decisions in *Ricketts v. Simonse*, 2016 WL 7335675 (S.D.N.Y. Dec. 16, 2016) and *Arias v. Aviles*, 2016 WL 3906738 (S.D.N.Y. July 14, 2016) went the same way, with both courts observing that "the opposite conclusion could yield undesirable results post-*Lora*" by "affording more protections to non-resident aliens detained under § 1226(c),

---

[6] *Judulang* involved applying the Administrative Procedure Act to a policy adopted by the Board of Immigration Appeals, which had "hing[ed] a deportable alien's eligibility for discretionary relief on the chance correspondence between statutory categories—a matter irrelevant to the alien's fitness to reside in this country." 565 U.S. at 53. The "task" before the Supreme Court in *Judalang* "involve[d] examining the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Id.* Although the task before this Court is not the same, it is disturbing to see that the exact same kind of reasoning that led to "headscratching oddit[ies]" in *Judalang* now has led to something as Kafkaesque as giving *criminal* aliens detained during prolonged removal proceedings a better opportunity to obtain bail than their *non-criminal* counterparts.

13

and for whom removal is authorized by law, than to LPRs detained pursuant to § 1225(b) and merely accused of wrongdoing." *Ricketts*, 2016 WL 7335675, at *4 (quoting *Arias*, 2016 WL 3906738, at *9).

Based on all the above, Nguti's petition for a writ of habeas corpus is GRANTED. As ordered below, the respondents shall, within one week, provide Nguti a bond hearing pursuant *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015). At the bond hearing, Nguti is entitled to be released on bond unless the government establishes by clear and convincing evidence that he poses a risk of flight or a risk of danger to the community. In addition, this Court adopts the Ninth Circuit's holding in *Singh*, 638 F.3d at 1209, that due process requires the bond hearing to be contemporaneously recorded. "In the absence of a transcript, an audio recording would suffice." *Id.* Should the respondents fail to provide such a bond hearing, the respondents shall release the petitioner from detention.

## II.   STATEMENTS IN THE RESPONDENTS' PAPERS

As previously noted, the petitioner alleged in his petition that he requested—and was denied—a *Lora* bond hearing. The government's responding papers, however, state that the petitioner actually did receive such a hearing. More specifically, the government's papers include the following:

- Supervisory Detention and Deportation Officer David Krygier states in his declaration, under penalty of perjury, that on "August 25, 2016, following a bond hearing in Nguti's case conducted pursuant to *United States v. Lora*, 804 F.3d 601 (2d Cir. 2015), an IJ denied Nguti's request to be released on bond." Docket Item 6-1 at ¶ 31.

14

- The government's Answer and Return repeats Officer Krygier's statement verbatim. Docket Item 6 at ¶ 29.

- The government's memorandum of law states "Petitioner Nguti was granted a *Lora* bond hearing. On August 25, 2016, the IJ denied Nguti's request for release on bond." Docket Item 7 at 12 n. 10 (internal citations omitted).

- Later, the government's memorandum of law states "Nguti has been provided a bond hearing pursuant to *Lora v. Shanahan*." *Id.* at 17.

After reviewing the IJ's decision, however, this Court ordered the government to explain its statements. *See* Docket Item 10. Contrary to the above statements by the government, the IJ's decision noted "Not eligible under *Lora* not held under § 236(c). Court lacks jurisdiction under § 236(a)." Docket Item 6-2 at 2. In this Court's view, the explicit determination that *Lora* does not apply seems to be *the exact opposite* of being "granted" or "provided" a "*Lora* bond hearing." This Court therefore asked for some reconciliation of this apparent contradiction.

The government's explanation adds little to this Court's initial impression. According to the government, the hearing that Nguti received was "not strictly a *Lora* bond hearing on the merits," but instead "was a hearing pertaining to *Lora* that was triggered by the stay of removal." Docket Item 11 at 6. So what the government apparently meant when it said that "Petitioner Nguti was granted a *Lora* bond hearing" or "provided a bond hearing pursuant to *Lora*" was that there had been some kind of appearance, at which it was determined that Nguti would not receive a *Lora* bond hearing.

Because *Lora* is a relatively recent development in the law (although it likely does not feel that way to Nguti, who was taken into custody at around the same time that *Lora* was decided), this Court will give the government and its attorney the benefit of the doubt. But if such careless statements again find their way into the government's papers, this Court will have a hard time concluding that they were not a deliberate attempt to deceive the Court.

## **CONCLUSION**

For all the above reasons, Nguti's petition for a writ of habeas corpus is GRANTED, and it is hereby

ORDERED that **within one week of the date of this order**, the government must provide Nguti a *Lora* bond hearing before an Immigration Judge. At the hearing, Nguti will be entitled to release on bond unless the government establishes by clear and convincing evidence that he poses a risk of flight or danger to the community. The hearing must also be contemporaneously recorded; and it is further

ORDERED that should the respondents fail to provide such a bond hearing, the respondents shall release the petitioner from detention; and it is further

ORDERED that **within one week of holding the *Lora* bond hearing**, the government shall provide this Court with a sworn declaration or affidavit from a person with knowledge stating how the government has complied with the terms of this Order.

SO ORDERED.

Dated: May 2, 2017
      Buffalo, New York

                                    *s/Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE