UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWIN FRU NGUTI,

       Petitioner,

  v.                                     16-CV-6703
                                          ORDER
JEFFERSON B. SESSIONS III, Attorney
General of the United States; JOHN F.
KELLY, Secretary of the Department of
Homeland Security; THOMAS P.
BROPHY, Acting Field Office Director,
Buffalo Field Office, Enforcement and
Removal Operations, U.S. Immigration
and Customs Enforcement; and JOSEPH
KOSAN, Acting Facility Director, Buffalo
Federal Detention Facility,

       Respondents.
_____

       The petitioner, Edwin Fru Nguti, is a civil immigration detainee currently held at the Buffalo Federal Detention Facility. On October 27, 2016, he filed a petition for a writ of habeas corpus under 28 United States Code Section 2241, arguing that he was being detained in violation of the Constitution or laws of the United States. Docket Item 1. On November 17, 2016, he filed an amended petition. Docket Item 3. This Court (Hon. David G. Larimer) ordered the government to respond, and the government did so on December 22, 2016. Docket Items 6 & 7. On March 31, 2017, this case was transferred from Judge Larimer to the undersigned. Docket Item 9.

       On May 2, 2017, this Court found that Nguti had been detained under 8 United States Code Section 1226(a) for longer than six months and therefore was entitled to a bond hearing under *Lora v. Shanahan*, 804 F.3d 601 (2d. Cir. 2015). *Nguti v. Sessions*,

2017 WL 1653030, at *6 (W.D.N.Y. May 2, 2017) ("the proposition that a [Section] 1226(a) detainee, after prolonged detention, ought to receive the same *Lora* bond hearing as a [Section] 1226(c) detainee strikes this Court as relatively uncontroversial"). For that reason, this Court ordered that "within one week of the date of the order, the government must provide Nguti a *Lora* hearing before an Immigration Judge." *Id.* at *7; Docket Item 12. A week later, Immigration Judge John B. Reid presided over a bond and custody redetermination hearing for Nguti. Docket Item 21-1. At the conclusion of the hearing, Judge Reid found that the government established, by clear and convincing evidence, that Nguti is a danger to the community based on his three prior DUI convictions. Judge Reid therefore ordered that Nguti remain in custody without bond. *Id.* at 16.

A week after the hearing, the government filed a sworn affidavit describing how it had complied with the terms of this Court's order of May 2, 2017. Docket Item 14. About two months later, however, Nguti disagreed and filed a status report alleging that, as a matter of law, the government had failed to comply with the order. Docket Item 21. At a status conference held on July 20, 2017, the Court heard from both sides and set a briefing schedule to allow the government to respond to Nguti's status report. Docket Item 24. On August 4, 2017, the government responded. Docket Item 25. And on October 6, 2017, Nguti replied.[1] Docket Item 30.

---

[1] Nguti also appealed Judge Reid's order to the Board of Immigration Appeals ("BIA").

## DISCUSSION

In his status report, Nguti argues that the evidence upon which Judge Reid relied could not possibly have met the government's burden to establish, by clear and convincing evidence, that Nguti is a danger to the community. Docket Item 21. Not surprisingly, the government disagrees. Docket Item 25.

Because this Court's May 2, 2017 order was a conditional order, it required the government to comply with its terms, principally to provide Nguti with a *Lora* hearing and file a status report. Docket Item 12. If the government did not comply, Nguti would be afforded further habeas relief. *See Enoh v. Sessions*, 2017 WL 2080278, at *2 (W.D.N.Y. May 15, 2017).

In reviewing the government's compliance with the May 2, 2017 order, this Court is careful not to overstep its bounds and set aside an immigration judge's bond determination on discretionary or evidentiary grounds. Such action would violate 8 United States Code Section 1226(e), which precludes the court from "set[ting] aside any action or decision . . . under this section regarding . . . the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e); s*ee Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *see also Hamilton v. Shanahan*, 2009 WL 5173927, at *3 (S.D.N.Y. Dec. 30, 2009), ("Section 1226(e) specifically divests this Court of jurisdiction to review the decisions of the [immigration judge] and the BIA (acting on behalf of the Attorney General) regarding detention of aliens under section 1226. Additionally, the Court lacks jurisdiction to review the [immigration judge]'s and the BIA's discretionary determinations. Accordingly, this Court lacks jurisdiction over [the detainee's petition] to the extent it asks the Court to review the weight that the [immigration judge] or BIA

3

assigned the evidence or any other discretionary determinations the [immigration judge] or BIA made . . . ."). On the other hand, this Court indeed has the jurisdiction to ensure that Nguti was given the bond hearing to which he was entitled. *See, e.g.*, *Enoh*, 2017 WL 2080278, at *2.

This Court's preliminary order in *Enoh v. Sessions*, which required the government to provide a *Lora* hearing to a detainee held longer than six months, was virtually identical to the Court's order here. *See id.* at *1. In *Enoh*, this Court found that the detainee had not received the hearing to which he was entitled because the evidence upon which the immigration judge relied could not possibly—as a matter of law—have constituted clear and convincing proof of the detainee's danger or flight risk. Indeed, the evidence cited by the immigration judge were simply facts recited in this Court's prior decision—second- and third-hand facts that this Court relied upon as background but did not find by a preponderance of the evidence, let alone by clear and convincing evidence. For that reason this Court concluded that the detainee could not possibly have been given the hearing to which he was entitled and ordered his release. *Id.* at *8-10.

This Court is not the first to consider whether a detainee has received the required bond hearing to which he was entitled. The Southern District of California, in *Judulang v. Chertoff*, found that the evidence upon which the immigration judge relied could not possibly—as a matter of law—have constituted clear and convincing proof that the detainee was a danger to the community and similarly ordered the detainee released. 562 F. Supp. 2d 1119, 1126 (S.D. Cal. 2008). Similarly, in *Cepeda v. Shanahan*, 2016 WL 3144394, *2 (S.D.N.Y. Apr. 22, 2016), the Southern District of New

York considered the constitutionality of a detainee's bond hearing. In *Cepeda*, the court clearly and succinctly articulated the difference between reviewing an immigration judge's determination for constitutional soundness—a determination to which a petitioner is entitled, as opposed to evidentiary soundness—a determination beyond the jurisdiction of district courts:

> To the extent [the petitioner] complains that his bond hearing was constitutionally deficient—*that is, that the government's evidence could not, as a matter of law, establish clearly and convincingly that [the petitioner] was dangerous, and therefore he was not accorded the process he is due*—he can seek redress from this Court.

*Id.* (emphasis added) (citations omitted).

So the question here is *not* whether this Court believes that the proof establishes, by clear and convincing evidence, that Nguti is a danger to the community. Rather, the question is whether the immigration judge relied upon proof that could not possibly establish by clear and convincing evidence—as a matter of law—that Nguti is a danger to the community.

Here, Judge Reid considered and addressed the actual evidence of Nguti's prior convictions, as well as the evidence in mitigation presented by Nguti.[2] The transcript—filed with Nguti's status report—shows the following: Judge Reid presided over the hearing; Nguti spoke during the hearing; the government submitted police documents—an I-213 and a National Crime Information Center "NCIC" printout—that showed Nguti had three DUI convictions on December 21, 2004, June 26, 2009, and August 30, 2014; Judge Reid asked Nguti's counsel whether Nguti had been convicted of the three DUIs,

---

[2] This is supported by the hearing transcript—which did not exist in *Enoh* or *Judulang* because the immigration courts did not record those hearings.

5

and Nguti's counsel confirmed that Nguti had "suffered" three DUI convictions.  Docket Item 21-1.  The transcript also shows that Judge Reid weighed several mitigating factors, including: Nguti does not own a car and cannot afford one; he does not have a driver's license; he does not need to drive; he will not drive because he can walk or get a ride from his family; and he is very willing to take an alcoholism course—to which Nguti testified.  *Id.*

After hearing all the evidence, Judge Reid decided that the government had established, by clear and convincing evidence, that Nguti is a danger to the community.  *Id.*  And he gave a reason for discounting the evidence in mitigation: "I don't know how you assure that somebody for a fourth time will drive with or without a license under the influence and potentially kill himself or other and do property damage."  *Id.* at 15-16.  Were this Court to review Judge Reid's decision in light of the evidence presented at the hearing, it would cross the boundary from evaluating constitutional soundness to evaluating evidentiary soundness—that is, exactly what it has been precluded from doing.  *See* 8 U.S.C. § 1226(e); *Cepeda*, 2016 WL 3144394; *Judulang*, 562 F. Supp. 2d 1119.

Nguti argues that the sources upon which Judge Reid relied—the I-213 and NCIC printout—cannot constitute clear and convincing evidence as a matter of law.  And the Second Circuit has held that a rap sheet alone, in certain contexts, cannot constitute clear and convincing evidence of a conviction.  *See, e.g.*, *Singh v. U.S. Dep't of Homeland Sec.*, 526 F.3d 72, 80 (2d Cir. 2008) ("We have previously held that an [immigration judge] errs in relying on a rap sheet as *conclusive* proof that an alien has been convicted of a particular crime for the purpose of the alien's removal

6

proceedings."). Docket Item 21. But together with the admission by Nguti's counsel that Nguti indeed had been convicted of the DUIs, the evidence here might well constitute clear and convincing evidence for the immigration judge's consideration. *See id.* ("an [immigration judge] may admit a rap sheet as partial evidence of such a conviction."); *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *Felzcerek v. I.N.S.*, 75 F.3d 112, 116 (2d Cir. 1996) (concluding that even though "the strict rules of evidence do not apply in deportation proceedings . . . the Form I–213 contain[s] guarantees of reliability and trustworthiness that are substantially equivalent to those required of documents admissible under Rule 803(8)"). Indeed, the evidence upon which Judge Reid relied to deny Nguti bond is precisely what the BIA recommends immigration judges should consider. Specifically, Judge Reid considered "the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *See In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Therefore, Judge Reid appropriately considered the I-213 and NCIC printout that listed Nguti's three DUI convictions.

Finally, Nguti argues that Judge Reid shifted the burden from the government to him when Judge Reid asked Nguti's counsel whether Nguti had, in fact, been convicted of the three DUIs. But asking a question of counsel does not shift any burden. And Judge Reid's decision makes clear that he well understood that the government had the burden to establish the risk of flight or danger to the community by clear and convincing evidence.

Again, whether this Court believes that the proof establishes, by clear and convincing evidence, that Nguti is a danger to the community is not the question.

Rather, this Court must decide whether Judge Reid relied upon proof that—as a matter of law—could not establish, by clear and convincing evidence, that Nguti is a danger to the community. That is not the case. And because this Court is without jurisdiction otherwise to review Judge Reid's decision, that ends the inquiry.

## **CONCLUSION**

For the foregoing reasons, the claims raised in petitioner's status report are DISMISSED.

SO ORDERED.

Dated: November 29, 2017
        Buffalo, New York

          *s/Lawrence J. Vilardo*
          LAWRENCE J. VILARDO
          UNITED STATES DISTRICT JUDGE